## United States District Court
### CENTRAL DISTRICT OF ILLINOIS

Shaquan Carter # Y15666,

)
)

Plaintiff

)
)
)

vs.

)
)

Case No. _____

*(The case number will be assigned by the clerk)*

Nurse Darcy Davis
C.O. Kevin Blacker
Warden Victor Calloway

)
)
)
)
)
)
)
)
)
)
)
)
)

Defendant(s)

*(List the full name of ALL plaintiffs and defendants in the caption above.  If you need more room, attach a separate caption page in the above format).*

### COMPLAINT"

*Indicate below the federal legal basis for your complaint, if known.  This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).  However, 42 U.S.C. § 1983 and "Bivens" do not cover all prisoners' claims.  Many prisoners' legal claims arise from other federal laws.  Your particular claim may be based on different or additional sources of federal law.  You may adapt this form to your claim or draft your own complaint.*

☑  42 U.S.C. §1983 (state, county or municipal defendants)

☐  Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)(federal defendants)

☐  Other federal law: _____

☐  Unknown _____

### I.  FEDERAL JURISDICTION

*\*Please refer to the instructions when filling out this complaint.  Prisoners are not required to use this form or to answer all the questions on this form in order to file a complaint.  This is not the form to file a habeas corpus petition.*

1

Jurisdiction is based on 28 U.S.C. § 1331, a civil action arising under the United States Constitution or other federal law. *(You may assert a different jurisdictional basis, if appropriate).*

## II. PARTIES

A. Plaintiff:

Full Name: **Shaquan Carter**

Prison Identification Number: **Y15666**

Current address: **Illinois River Correctional Center P.O. Box 999, Canton, IL. 61520**

*For additional plaintiffs, provide the information in the same format as above on a separate page. If there is more than one plaintiff, each plaintiff must sign the Complaint, and each plaintiff is responsible for paying his or her own complete, separate filing fee.*

B. Defendants

Defendant #1:

Full Name: **Darcy Davis**

Current Job Title: **Nurse, R/LPN, PRN.**

Current Work Address **Danville Correctional Center 6820 E. Main St. 61820 (Danville IL)**

Defendant #2:

Full Name: **Kevin M Blacker**

Current Job Title: **Correctional Officer**

Current Work Address **6820 E. Main St./61820 (Danville, IL) Danville Correctional Center**

Defendant #3:

Full Name: **Victor P. Calloway**

Current Job Title: **Warden of Danville C.C.**

Current Work Address ~~6820~~ 6820 E. Main Street. Danville, IL 61820
_____

Defendant #4:

    Full Name: _____

    Current Job Title: _____

    Current Work Address _____

    _____

Defendant #5:

    Full Name: _____

    Current Job Title: _____

    Current Work Address _____

    _____

*For additional defendants, provide the information in the same format as above on a separate page.*

### III. LITIGATION HISTORY

    The *"three strikes rule"* bars a prisoner from bringing a civil action or appeal <u>in forma pauperis</u> in federal court if that prisoner has *"on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?    Yes ☐    No ☑

If yes, please describe _____

_____

B. Have you brought any other lawsuits in federal court while incarcerated?

Yes ☑    No ☐

C. If your answer to B is yes, how many? __1__ Describe the lawsuit(s) below.

3

1. Name of Case, Court and Docket Number
   SHAQUAN CARTER VS RAYMOND WITHERS, CD-IL, 17-CV-2253

2. Basic claim made  Deliberate Indifference

3. Disposition (That is, how did the case end? Was the case dismissed? Was it appealed? Is it still pending?)  Settlement Reached

*For additional cases, provide the above information in the same format on a separate page.*

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Prisoners must exhaust available administrative remedies before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). You are not required to allege or prove exhaustion of administrative remedies in the complaint. However, your case must be dismissed if the defendants show that you have not exhausted your administrative remedies, or if lack of exhaustion is clear from the complaint and its attachments. You may attach copies of materials relating to exhaustion, such as grievances, appeals, and official responses. These materials are not required to file a complaint, but they may assist the court in understanding your claim.*

A. Is there a grievance procedure available at your institution?   Yes ☑   No ☐

B. Have you filed a grievance concerning the facts relating to this complaint?

   Yes ☑   No ☐

If your answer is no, explain why not _____

_____

C. Is the grievance process completed?   Yes ☑   No ☐

## V. STATEMENT OF CLAIM

Place(s) of the occurrence  Danville Correctional Center

4



PlaintiFF Request to pay Filing Fee in Full (at once)
For 1983 · Complaint.

There should Be a Total oF 45 pages.
Including this sheet oF paper.

＊ Note to Court.

Date(s) of the occurrence ___8/31/2019, 9/1/2019, 9/17/2019, 9/21/2019/9/22 Late October 2019___

*State here briefly the FACTS that support your case. Describe what each defendant did to violate your federal rights. You do not need to give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph. Unrelated claims should be raised in a separate civil action.*

*THE COURT URGES YOU TO USE ONLY THE SPACE PROVIDED. Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement" of your claim showing that you are entitled to relief. It is best to include only the basic, relevant facts, including dates, places, and names.*

The following complaint arises from events that occurred while the Plaintiff, Shaquan Carter, was housed at Danville Correctional Center. Dates include August 31, 2019, September 1, 2019, September 17/18, 2019, September 21/22, 2019 and late October 2019.

1. The claims alleged are violations to the Plaintiff's 8th Amendment right to be free from cruel and unusual punishment, 14th Amendment right to due process and equal protection of the law, 1st Amendment right to be from retaliation for redressing grievances to the government and accessing the Courts. Plaintiff makes claims of conditions of confinement, deliberate indifference, retaliation, mental anguish, and conspiracy.

2. On August 31, 2019, Plaintiff was attending "Med line" (medication line) on his assigned housing unit 1-C to receive medication for his anxiety and asthma.

3. During medication line an Inmate has to reach his hand through a rectangular shaped "chuck hole" to receive their medication with the nurse on the other side of the glass.

4. This process ordinarily takes no more than 2-5 seconds per inmate, as the nurse only needs to dump the medication into the hand of the awaiting inmate.

5

5. On this particular day the Plaintiff was reaching through the chuck hole to receive his medication when his hand mistakenly bumped Defendant Darcy's as she was distributing meds. Defendant Darcy alleged that the Plaintiff had grabbed her hand in a "sexual manner" which made her feel "uncomfortable". Defendant Darcy notified zone lieutenant Simmons (~~Simmons~~) that Plaintiff had become sexually aggressive with her, and ~~Simmons~~ Simmons who was directly beside Def. Darcy, placed the Plaintiff in handcuffs and escorted him to segregation, which is tantamount to solitary confinement. While walking to segregation the Plaintiff attempted to plead his position to ~~Def.~~ Simmons who spuriously claimed that he did not see what occurred. Plaintiff in fact did see ~~Def.~~ Simmons monitoring the Nurse while she dispensed medication and knows that he witnessed the event, which is why he requested that ~~Def.~~ Simmons be a witness at his disciplinary hearing as to the truth of the matter. In addition, it was ~~Def.~~ Simmons duty to monitor the nurse as she dispensed medication, yet he chose to ~~did not do that~~ ~~to~~ remain complicit to the false allegations of Def. Darcy.

6. On that same day (8/31/2019) Plaintiff started to exhibit trouble breathing because he was panicking and anxious about being charged with sexual misconduct against Def. Darcy. Plaintiff believed that he would be charged with some sort of case in court, in addition to being placed in the small segregation cell with

*poor*

Ventilation. Plaintiff never had been alleged to become "sexually aggressive", as Def. Darcy put it, with any woman, let alone a nurse within a penal institution, so he feared the worst.

7. Because of this breathing trouble and heightened anxiety, Plaintiff felt it necessary to have his asthma pump readily available. Plaintiff looked at his inventory sheet and noticed that his asthma pump was not there.

8. Because Plaintiff did not know the officer's name at the time who inventoried his property, he just yelled, "C/O who inventoried Carter's property", several times before the individual who later became known as Def. Blacker responded. Plaintiff related to Def. Blacker that he was experiencing shortness of breath and wheezing and asked him where his asthma pump was. Defendant Blacker related back that he would come place it in the box when he gets to it. (In Danville C.C. inmates are not allowed to possess asthma pumps within their cells in segregation, but they instead must be placed inside a wooden box outside of the inmates cell.) Plaintiff emphasized that he felt as if he was going to have an asthma attack and needed it.

Def. Blacker facetiously quipped, "I lost it". Plaintiff vehemently expressed that he is having trouble breathing and implored for Def. Blacker to "stop playing". Def. Blacker retorted, "if you couldn't breath you would not be talking". Plaintiff then retired for a moment as he was becoming exasperated. and dizzy. There was no emergency button in the cell to contact any other officers which is hazardous.

9. A small time later Plaintiff caught the attention of C/O Hucks walking by and asked him was his asthma pump "up there" (up front with the officers) he answered in the negative, and stated that it was not in his property, after he presumably checked.

10. On the morning of September 1, 2019 at shift change (11pm — 7am) Plaintiff asked another officer was his asthma pump up front or in his property. This officer responded in the negative as well after he presumably checked. Plaintiff last left his asthma pump in his property.

11. Plaintiff then forced himself to sleep to avoid an asthma attack. When Plaintiff awakened that morning his shortness of breath, and wheezing persisted so he yelled for an officer's attention to get ~~the car~~ his plaintiff asthma pump ~~from health care~~; no one responded. Minutes later, Plaintiff had a severe asthma attack and fainted.

12. Plaintiff was later found unresponsive and was carried to healthcare on a stretcher. He was treated with oxygen and asthma medication through face mask. This temporarily helped and plaintiff suffered severe chest pains, loss of sleep, anxiety attacks, shortness of breath and mental anguish due to the asthma attack. (See EX 1)

13. Nurse Cole chided and reprimanded the officers for not having the Plaintiff's asthma pump present in the first place and for their lack of response to his emergency. (See EX 1) She then instructed them to placed the newly issued asthma pump in the box outside of the cell. (See EX 1) (Noting Asthma attack, pain, issuance of inhaler)

14. Nurse Cole inquired of the asthma pump issued to Plaintiff. Plaintiff related that he believed that Def. Blacker disposed of it someway because he suggested that he had it. (he would "come place it in the box when he gets to it".) And that Blacker inventoried his property where the pump was

15. Insult was added to injury because on September 2, 2019, I was served with the Disciplinary Report that Def. Darcy had written against me. To Plaintiff's dismay, he was charged with a 107 - Sexual misconduct and 304 Insolence, alleging that he had grabbed Def. Darcy's hand in a sexual manner. Plaintiff was befuddled and perplexed as to why Def. Darcy would make such an allegation. Plaintiff arrived at the conclusion that Def. Darcy was possibly harboring animosity toward him because he gave her a hard time for giving him the wrong medication on two prior occasions

16. On September 6, 2019, Plaintiff was summoned to the Adjustment Committee to hear the allegations brought against him by Def. Darcy. He plead not guilty and explained that his hand accidently touched (bumped) Def. Darcy's while receiving his meds. He requested that Lt. Simmons be called to attest to the matter, however, he was not. (see EX 2)(Ticket and Summary)

17. Plaintiff received a final summary report from the hearing finding him guilty of both the Sexual misconduct and Insolence. As a result, he received 1 month C Grade, (a demotion from A Grade where you lose all of your privileges including attending college courses)

1 month segregation, Disciplinary Transfer, 1 month Day Room Restriction, 1 month Commissary restriction, and 1 month audio/visual restriction. (see Ex. 2)

18.   This caused Plaintiff major anxiety, depression, and other mental anguish, such as loss of sleep, racing thoughts, loss of appetite, feelings of helplessness, inter alia, as not only was the sexual misconduct an indelible mark on his record, he would potentially have to serve a longer aggregate sentence, as he could have potentially earned retroactive good conduct credit for attending college courses, and he would miss the education opportunity. In addition to being relocated to a disciplinary institution further away from his family with less educational opportunity. He also would be deprived of his T.V., Tablet, radio, day room privileges and phone privileges. (Ex. 2)

19.   The mental anguish Plaintiff experienced coupled with the anxiety and depression from being in segregation, being charged with sexual misconduct, potentially having to stay in prison longer, being on disciplinary transfer to a worse prison (which is what occurred) and suffering an asthma attack caused him to call for a mental health crisis, on September 18, 2019, as he felt his sanity slipping. (see Ex. 3)

20.   At this point the Plaintiff had been in segregation for 19 days and was at the lowest point of his life.

21.   On September 18, or, 19, Def. Calloway apprised Plaintiff that Def. Darcy had come to him independently to confess that it was not true that Plaintiff had

grabbed her in a sexual manner as she had previously alleged, thus exculpating the Plaintiff. However, this is what the Plaintiff was trying to explain to Def. Calloway via grievance and personal letters from segregation all along. Plaintiff was forced to endure all of the afore-mentioned pain and suffering and mental anguish over false sexual misconduct allegations, presumably because Plaintiff had previously admonished Def. Darcy not to give him the wrong medication. Everything that Plaintiff suffered through was because of her, and Calloway's complicity.

22.    Plaintiff was still forced to remain in segre-gation for two to three more days until he was released on September 21 or 22, 2019, After serving 22 days. Plaintiff was then issued another Final Summary from the adjustment committee on September 24, 2019 finding him "not guilty" of the 107 - sexual misconduct but finding him "guilty" of the 304 insolence. All of the prior disciplinary sanctions were rescinded including the disciplinary transfer, However, the Committee still imposed a 15 day Commissary restriction sanction upon Plaintiff for the 304 - insolence. (See Ex 4) (Not Guilty)

23.    Defendant Darcy admitted that the allegations against Plaintiff made on August 31, 2019 were not true, per Def. Calloway, so why was the Plaintiff still being found guilty of the insolence and levied a sanction?

24. In the body of an "offender Disciplinary Report" it has: "Observation  (Note: Each offense identified above must be substantiated". (See Ex.2, Def. Darcy's Disciplinary Rep.)

Since this is the proper procedure in determining ones guilt, then it could not have been the case that Plaintiff was guilty of the 304-insolence, as per Warden Calloway himself, she, Def. Darcy, admitted that the allegations in the ticket were not true, therefore, the offense of 107-sexual misconduct could not be substantiated, neither could the 304-insolence, as insolence reflects the audacity and intent of one even committing the alleged offense, therefore, the 107-sexual misconduct and 304-insolence are inextricable, you cannot have the insolence without the sexual misconduct, he should have been found not guilty on both, and the ticket expunged. Further, Defendant Calloway after receiving this information, since he is the CAO, Chief Administrative Officer, who has final say on disciplinary matters should have sought to delete the ticket and proceedings from the record completely.

25.   Instead, in response to Plaintiff's filing of grievances against Def. Darcy and Def. Blacker, Def. Calloway still placed Plaintiff on disciplinary transfer in October 2019. But the new Final Summary reflects that all of the prior disciplinary sanctions had been rescinded from against Plaintiff's record including the Disciplinary transfer. And as the Counselors response on Plaintiff's grievance reflects "Issue resolved on 10/8/19, Only discipline received was 15 days Commissary Restriction" (see EXS. 4 & 5) Where did the disciplinary transfer come from?

26. Plaintiff had already suffered enough with an asthma attack, being removed from school, mental anguish and anxiety in addition to 22 days in segregation, now defendant Calloway was going to send him to a prison further from his family with a worse environment all for seeking disciplinary sanctions against Def. Darcy and Def. Blacker for their actions which resulted in the pain and suffering that the Plaintiff endured. This is retaliation for exercising my right to redress grievances to the government and effectively impeded Plaintiff's ability to bring a claim to this Court by not answering the Plaintiffs grievances.

27. Plaintiff requests that the Court not overlook the Defendants conduct and violations of his clearly established constitutional rights and to levy sanctions and damages compensatory and punitive as a deterent.

## COUNT ONE
## DELIBERATE INDIFFERENCE ~~(~~
## DEFENDANT BLACKER

The following offenses was committed by Defendant Kevin M. Blacker, correctional officer, at Danville C.C. under the color of state law:

1. Plaintiff, for purposes of his First cause of action against Defendant Blacker in his official and individual capacity states as follows:

A) Defendant Blacker on August 31, 2019, was deliberately indifferently to the seriousness of Plaintiff's Shortness of breath and wheezing which lead to the Plaintiff's asthma attack. Defendant Blacker lead Plaintiff to believe that he possessed Plaintiff's asthma pump by stating that he would "come place it in the box when he gets to it". It made sense that Blacker would be in possession of Plaintiff's asthma pump as it was in his property and Blacker inventoried the plaintiff's property. If the asthma pump was not in the plaintiff's property, after receiving information that Plaintiff was asthmatic and experiencing shortness of breath and wheezing, Blacker should have contacted healthcare to apprise them that Plaintiff may be on the precipice of having an asthma attack and has no inhaler, and directed them to provide one immediately, or called a Code 3, medical emergency. Instead, Blacker trivialized Plaintiff's breathing complications by saying, "if you couldn't breath you would not be talking", and certainly should not have lead him to believe that he had it and "lost it". But for Defendant Blacker's deliberate indifference to Plaintiff's serious medical need he may not of had the subsequent asthma attack and fainting in which he was found "Non - Responsive" on September 1, 2019, and would not have experienced the subsequent loss of sleep, chest pains and anxiety thereafter. Plaintiff requests for the Defendant to be held responsible,

as his actions/inactions led to a condition of confine-
ment that is cruel and unusual under the 8th Amendment
and is tantamount to torture, and served no penological purpose.

## COUNT TWO
## CONDITIONS OF CONFINEMENT

2. B Plaintiff, for purposes of his second cause of action
against Defendant Blacker in his official and individual
capacity states as follows:

B) Plaintiff wishes to state a claim of conditions of confinement
against Def. Blacker and incorporates all of the allegations
set forth in count one.

## COUNT THREE
## CRUEL AND UNUSUAL PUNISHMENT

3.  Plaintiff, for purposes of his third cause of action
against Defendant Blacker in his official and individual
capacity states as follows:

C) Plaintiff wishes to state a claim of cruel and unusual
punishment against Def. Blacker and incorporates all of
the allegations set forth in count one.

# COUNT ONE
## CONDITIONS OF CONFINEMENT
### DEFENDANT DARCY

The following offenses were committed by Defendant Darcy Davis, LPN, PRN Nurse, at Wexford Health Services Contracted through the I.D.O.C. at Danville C.C., under the color of State law:

1. Plaintiff, for purposes of his first cause of action against Defendant Darcey in her official and individual capacity states as follows:

A) Defendant Darcy on August 31, 2019, created a condition of confinement that caused Plaintiff to experience Deliberate indifference, Cruel and unusual punishment, and she intended to cause mental anguish and psychological trauma to Plaintiff when she retaliated against him for admonishing her not to continue to give him the wrong medication. She accomplished this by Falsifying a State document to reflect as if he had engaged in sexual misconduct with her in an insolent manner, causing him to be placed in segregation, tantamount to solitary confinement which is akin to torture and punitive in nature. There, he had an asthma attack that was triggered by her false allegations coupled with the poor ventilation in the segregation cell and an officer refusing to procure him, his, or, an asthma pump.

Her actions caused him to experience anxiety attacks, loss of sleep and other mental anguish and psychological trauma including setting him on course to be transferred to a disciplinary facility where he would be further away from his family, locked in a cell more, and kicked out of college, in addition to having to be locked in a tight cell for 24 hours a day unable to shower but one maybe two times per week and unable to talk to his family for ░ days. Defendant Darcy intended to retaliate against Plaintiff with the sexual misconduct allegations to have him experience psychological trauma and if her actions were not motivated by retaliation, then her conduct is more alarming, as her false allegations would have been for nothing, thus, any unsuspecting inmate could experience the same circumstances as Plaintiff because of a false report by her, all seemingly for nothing. Although Def. Darcy later confessed that her allegations were not true, the damage was done, and it does not negate the fact that Plaintiff suffered an asthma attack which could have resulted in death or brain damage or organ failure due to a lack of proper oxygen. But for Def. Darcy falsifying a state document to make it appear as if the Plaintiff intended to become sexually aggressive with her, he would not have been placed in segregation where he experienced an asthma attack, anxiety attacks, kicked out of school, suffered mental anguish, and would not have been transferred to a disciplinary prison further away from his family, inter alia.

## COUNT TWO
## CRUEL AND UNUSUAL PUNISHMENT

2. Plaintiff, for purposes of his second cause of action against Defendant Darcy in her official and individual capacity states as follows:

B) Plaintiff wishes to state a claim of cruel and unusual punishment against Def. Darcy and incorporates all of the allegations set forth in count one. Plaintiff requests that the Court attribute Plaintiff's suffering to Def. Darcys actions.

## COUNT ONE
## RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHT
### DEFENDANT CALLOWAY

The following offenses were committed by Defendant Victor P. Calloway, Warden, at Danville C.C. under color of state law:

1 Plaintiff, for purposes of his first cause of action against Def. Calloway in his official and individual capacity states as follows:

A) Defendant Calloway on or about September 3 or 4, 2019 was forwarded personal letters from Plaintiff complaining of Def. Blacker's deliberate indifference and Def. Darcy's falsification of a state document. Plaintiff related that he had suffered an asthma attack and that Blacker refused to get him healthcare. He related that other officers on the morning of September 1, 2019 were not responsive to his repeated pleas for help. He related that Def. Darcy falsely claimed that he had become sexually aggressive with her which landed him in Segregation. Plaintiff requested that video footage be reviewed and preserved to ascertain the truth of the matter. He related to the warden ~~~~~~~~~~~~~~~ that he was going to be disciplinary transferred and is going to be further away from his family and kicked out of school. These pleas to the Defendant seemed to have fallen on deaf ears until approximately September 18 or 19, when Def. Calloway came to the Plaintiff's cell in Segregation to relate to him that Def. Darcy's independently confessed to him that she had made a false allegation against the plaintiff. Plaintiff, among other things, expressed concern over the Disciplinary transfer and the mental anguish that it would cause to be further from his family which would effect his visits. Among other things, Def. Calloway related that the ticket would be expunged because it was false and that all of the punishment would be rescinded including the Segregation time and disciplinary transfer. ~~~~~~~, Instead, Def. Calloway let plaintiff out of

segregation eight days before the 30 days he was given and still found him guilty on the insolence, levying a sanction of 15 days commissary restriction, violating due process gaurantees, as Plaintiff enjoyed the right to be presumed innocent until proven guilty, even in the prison proceedings. Plaintiff forwarded additional letters and grievances to Def. Calloway demanding that he be fully exculpated, and actual answers to his grievances. In October 2019, in retaliation for Plaintiff's demand that Def. Calloway levy consequences as a deterrent upon Def. Darcy and Def. Blacker, he was transferred to a disciplinary prison for no other reason than exercising his right to redress grievances to the government so that he may bring this matter before a tribunal. Defendant Calloway impeded that process by not answering or not demanding that plaintiff's grievances be answered and further violated the Plaintiff's right to due process found under the fourteenth amendment when he had Plaintiff transferred to a disciplinary prison without a hearing, and for no other reason than trying to exercise his first amendment right to deter future conduct like that of Def. Darcy and Def. Blacker. But for the conduct of Def. Calloway ignoring Plaintiff's requests that a proper investigation be conducted into the truth of the matter of why he was in seg. and retaliating against Plaintiff for pursuing his rights, he would not have done so much time in segregation and would not have been disciplinary transferred to a worse

# CONCLUSION

Fact of the matter is Plaintiff was subject to needless suffering at the hands of all of the Defendants and at every juncture where the Defendants could mitigate the Plaintiff's suffering; they in fact exacerbated it. From the initial Falsification of a state document, to the subsequent asthma attack, the stay in segregation, and disciplinary transfer, Plaintiff needlessly suffered. Therefore, Plaintiff requests that this Honorable Court allow him his day in court to hold the defendants responsible under the law.

Respectfully Submitted,

/S/

Date: 2 / 26 / 21

RELIEF REQUESTED

(State what relief you want from the court.)

The Plaintiff, Shaquan Carter, requests that this

Honorable Court assess Compensatory damages of $35,000.00 and Punitive damages of $50,000.00 against Defendant Darcy Davis for the needless physical and psychological suffering that he endured as a result of her actions, that compensatory damages of $30,000.00 and Punitive damages of $45,000.00 be assessed against Defendant Kevin M. Blacker as a deterrent for the needless physical and psychological suffering that he caused Plaintiff with his actions/inactions, and that Compensatory damages of $15,000.00 and Punitive damages of $30,000.00 be assessed against Defendant Calloway for contributing to the needless suffering of Plaintiff

JURY DEMAND    Yes ☑   No ☐   for a total of $~~105~~,000.00 And for
$(205),000.00

ther Court to issue an injuncting Prohibiting the IDOC from taking an inmates

Signed this _____ day of _Friday, February 26th_, 20_2 1_. asthma Pump Period.

Plaintiff also requests to Be sent
to a Prison of his choice.

_____
(Signature of Plaintiff)

| Name of Plaintiff: | Inmate Identification Number: |
|---|---|
| Shaquan Carter | Y 15666 |
| Address: Illinois River CC<br>PO Box 999<br>Canton IL. 61520 | Telephone Number:<br>N/A |

23